UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

XIAOQUN LI, Petitioner,

v. Civil Action No. 4:26-cv-617-RGJ

MARKWAYNE MULLIN, et al., Respondents.

****

**ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Li Xiaoqun ("Petitioner"). The United States as counsel for the Federal Respondents ("Respondents")[1] responded [DE 10]. Petitioner has not replied, and the time for doing so has passed. This matter is ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**.

There is no dispute regarding the relevant facts. Petitioner is a native and citizen of China. [DE 10 at 62]. Fearing religious persecution in China, Petitioner entered the United States without inspection on or about February 19, 2023. [DE 1 at 8]. Petitioner was served with a Notice to Appear [DE 1-1] and placed in removal proceedings under 8 U.S.C. § 1229a. [DE 1 at 8]. Petitioner was released and applied for asylum [DE 1-2]. [DE 1 at 17]. An immigration judge denied Petitioner's asylum application, and Petitioner has appealed that denial to the Board of Immigration Appeals. [*Id.*]. His appeal remains pending. [*Id.*]. On May 20, 2026, Indiana State Police encountered Petitioner and contacted the Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations office in Chicago. [DE 13-3 at 82]. The Chicago office

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 10 at 62 n.1].

issued an administrative warrant [DE 13-1] for Petitioner's arrest. [DE 13-3 at 82]. Petitioner was taken into custody, and he is currently detained at the Hopkins County Jail in Madisonville, Kentucky. [DE 1 at 3]. Petitioner filed a Petition for Writ of Habeas Corpus [DE 1] on September 14, 2026.

The parties further agree that Petitioner's detention is governed by 8 U.S.C. § 1226(a), pursuant to *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732-35 (6th Cir. 2026). [DE 1 at 19 ("Petitioner's detention is governed under 8 U.S.C. § 1226 because he has lived in the interior for more than three years following his release at the border by DHS.") (citing *Lopez-Campos*); DE 10 at 63 ("Petitioner is detained under 8 U.S.C. § 1226(a).") (citing *Lopez-Campos*)].

Although the parties agree Section 1226(a) governs Petitioner's detention, the United States asserts that Petitioner's detention is lawful because "Petitioner was detained post *Lopez-Campos*, and bond hearings on the merits have been available to him from the inception of his detention." [DE 10 at 69]. Accordingly, Respondents contend that "[i]f Petitioner wants a bond hearing before the Immigration Court, all he needs to do is simply request one. Here, Petitioner has never requested a bond hearing before the Immigration Court." [DE 10 at 63]. In other words, Respondents agree that Petitioner is entitled to a bond hearing but must first request one before asserting a due process violation. According to Petitioner's Form I-213, Record of Deportable/Inadmissible Alien, however, he is being "[h]eld in ICE Custody without bond due to current ICE Policy." [DE 13-3 at 83].

Pursuant to Section 1226(a) and 8 C.F.R. § 236.1(d), ICE makes an initial custody determination, records it on Form I-286, and then the noncitizen may request a redetermination. 8 C.F.R. § 236.1(d). Here, however, while it appears that ICE officers completed an I-286 [DE 13-

4],[2] Respondents concede that the form was "unexecuted," that is, that it was never provided to Petitioner. [DE 13 at 77]. Petitioner was provided with a Form I-200 Warrant for Arrest of Alien both when he was initially detained [DE 13-1] on May 20, 2026, and when he was moved to an ICE facility [DE 13-2] on May 21, 2026. [DE 13 at 76]. But neither form indicates the basis for Petitioner's detention or the reasons for his custody determination. [*See* DE 13-1 at 79; DE 13-2 at 80]. Petitioner's Form I-213, on the other hand, stated that Petitioner was to be held "in ICE custody without bond due to current ICE Policy." [DE 13-3 at 83]. In other words, ICE determined, and Petitioner was informed, that he was to be detained under "current ICE Policy," which has been mandatory detention without a custody redetermination hearing. This Court has repeatedly found this ICE Policy is "akin to mandatory detention under Section 1225(b)." *See Randhawa v. Maglinger et al.*, 4:26-cv-00442-RGJ, Dkt. 14 (W.D. Ky. July 13, 2026) (rejecting argument that petitioner was required to request bond hearing and finding ICE's Policy was equivalent to the petitioner "being subjected to mandatory detention that *Lopez-Campos* forbids for petitioners under Section 1226(a)"); *see also Kumar v. Lewis, et al.*, 4:26-cv-00481-RGJ, Dkt. 21 (W.D. Ky. Aug. 21, 2026); *Mann v. Francis, et al.*, 4:26-cv-00551-RGJ, Dkt. 10 (W.D. Ky. Aug. 21, 2026).

Respondents contend that Petitioner had notice that the basis for his detention was § 1226 and not § 1225 because "Petitioner stated in his petition numerous times that he was detained under 8 U.S.C. § 1226." [DE 13 at 76]. Respondents misunderstand Petitioner's Petition. Petitioner

[2] The Court notes that Respondents failed to provide this form as well as Petitioner's Form I-200 and Form I-213 in their response [DE 10] to this Court's Show Cause Order [DE 5]. The Court's Show Cause Order ordered Respondents to provide any Form I-286 and Form I-200 as well as any related documents, such as Petitioner's Form I-213, in their response "as applicable." [DE 5 at 50-51]. Nonetheless, Respondents contend that their failure to provide these forms was not in violation of the Court's Order because Respondents believe the forms are not "relevant to this dispute" and therefore not "applicable." [DE 13 at 74-75]. As this order shows, the fact that such documents are not relevant to Respondents' argument does not bear on their relevance to this Court's analysis. To ensure perfect clarity, the Court notes that any documents providing notice to a petitioner or stating the authority under which a petitioner is held, even if only internal to the agency, are typically relevant to the Court's analysis of a petition for writ of habeas corpus.

argues that, like petitioners in *Lopez-Campos*, he is subject to § 1226, not § 1225(b), and that his mandatory detention under § 1225(b) is unlawful. [*See* DE 1 at 9 ("*Lopez-Campos* establishes that § 1225(b)(2)(A)'s mandatory detention provision does not govern [Petitioner's] custody")]. Rather than showing Petitioner's knowledge that he is detained under § 1226, the Petition demonstrates the opposite: that Petitioner believes he is unlawfully detained under § 1225(b).

Like the Petitioners in *Lopez-Campos*, Petitioner has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.*

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the

judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for over five months. As such, Petitioner's continued detention, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

For the reasons set forth above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket **by November 6, 2026**.

Rebecca Grady Jennings, District Judge
United States District Court

November 5, 2026